UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RONALD PARISH                                          CIVIL ACTION

VERSUS                                                 NO. 12-2315

AETNA LIFE INSURANCE COMPANY                           SECTION "H" (3)

ORDER

On July 24, 2013, the Motion to Compel Discovery [Doc. #14] came on for oral hearing before the undersigned. Present were Shane Pendley on behalf of plaintiff Ronald Parish ("plaintiff" or "Parish") and Eric Mathisen on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition and the case law, the Court rules as follows.

I.      Background

The complaint alleges as follows. Parish is a plan participant and beneficiary of an Employee Retirement Income Security Act ("ERISA") plan created by his employer, Ceva Logistics, and an insured participant of a group disability policy issued by defendant Aetna Life Insurance Company ("Aetna"). Parish filed a claim for disability benefits with the Plan because his medical condition precludes him from continuing to perform the duties of his job on a full-time basis. Parish contends that he is disabled under the Aetna disability policy. Aetna denied Parish's claim. He appealed, and Aetna upheld its decision. Parish contends that Aetna abused its discretion in denying

his claim. Parish then sued Aetna under ERISA in this Court.

## II.    The Parties' Contentions

### A.        Plaintiffs' Motion to Compel

Parish argues that Aetna operates under the type of structural conflict of interest identified by the United States Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), because it is responsible both for making benefits determinations and for funding the Plan. Parish contends that his discovery requests relate to this conflict of interest, an issue that the District Court must resolve.

Parish argues that Aetna, in its motion for summary judgment, will contend that the conflict of interest had no bearing on its denial of his claims, and he must thus be allowed to conduct discovery outside the administrative record on this issue.  Citing case law from this circuit, Parish notes that courts have allowed discovery outside the administrative record on this issue.  This is the "conflict discovery" exception to the general rule which does not permit discovery outside the record in ERISA cases.

Pointing to specific discovery requests, Parish maintains that they seek information relating to Aetna's internal policies or methods, to identify the individuals who have the most complete knowledge of the policies, and to identify individuals who participated in the review of his claims but whose names do not appear in the administrative record.

Other discovery requests seek claims manuals, guidelines and handbooks and the performance evaluations of the individuals who participated in the denial of Parish's claim, discovery that this Court has allowed before.  *See Lapenter v. Hartford Life & Accident Ins. Co.*, Civ. A. No. 12-1442, E.D. La., Doc. #22.  Other requests seek audio recordings of communications

2

between Aetna and Parish as well as recordings of communications related to Parish's claim regardless of who participated in the conversation. This Court has ordered the production of such discovery before. Parish notes that Aetna's administrative record contains documents that reflect telephone conversations and summaries of the conversations. If recordings exist, then, they may be inconsistent with the summaries. Lastly, Parish seeks any documents that reflect Aetna's written communications regarding Parish's claim. Parish maintains that they are relevant for the same reasons as the audio recordings.

Parish maintains that his requests are not overbroad, vague, ambiguous or unduly burdensome. Aetna failed to provide the reason that it objected on these grounds. And Parish argues that the attorney-client and work-product privileges do not apply here. Parish contends that the only communications with lawyers would have been between Aetna and in-house counsel. Citing case law, Parish notes that when in-house counsel advises a plan administrator on the plan, the plan beneficiaries are the lawyer's clients, not the plan administrator. As to the work-product privilege, Parish maintains that none of the documents was prepared in anticipation of litigation.

Aetna objected on the ground that Parish seeks confidential and/or proprietary information but failed to explain why any of the information would be confidential and/or proprietary. Aetna also objected that Parish seeks private information of non-parties but again failed to explain what privacy rights of non-parties would be invaded.

## B.    Aetna's Opposition

Aetna argues that conclusory and speculative assertions of a conflict of interest are insufficient to permit discovery under ERISA. It notes that the Fifth Circuit has cautioned that district courts monitor discovery closely. Aetna further lists the discovery that it has already

3

provided to Parish, well beyond that required in ERISA litigation.

Aetna contends that seeking the policies and procedures regarding its duties and responsibilities asks for information far afield from its review of long-term disability claims. And Aetna notes that Parish's requests have no temporal limitation. Aetna maintains that it has already responded concerning any procedures in place to reduce the potential for biased claims decisions. Citing case law from this circuit, Aetna notes that courts have denied discovery requests that seek whether or not the defendant has a "consistency plan."

With regard to the "batting average" of Dr. Rubin, who performed a medical review on Parish, Aetna notes that courts have denied this type of discovery given that the doctor does not ultimately determine who is disabled, Aetna does. Aetna contends that the request is also overbroad in time and scope. Aetna notes that not all claimants are even subject to medical review. Aetna also notes that Dr. Rubin's report is in the administrative record. Any request as to Dr. Rubin's compensation should be denied, it argues, because the only conflict of interest at issue is that of Aetna. Aetna already responded that its physicians are paid based on the time spent performing medical reviews.

Aetna maintains that the compensation of its employees is not reasonably calculated to lead to the discovery of admissible evidence. Aetna provided information as to the structure of compensating its personnel. Aetna notes that courts deny discovery when the defendant responds that the compensation of its personnel is not tied to claims denials.

Aetna also argues that the performance evaluations of Carole Roy and Susan Page seek highly confidential and personal information of two employees not even involved in the decision to terminate Parish's benefits. Aetna notes that it will produce – on Court order – a blank

4

performance evaluation to demonstrate that the evaluations are not tied to claims denials.  With regard to the requests that seek information on all individuals who had knowledge of the claim, that information is in the administrative record, Aetna maintains.  Aetna has withheld nothing on the ground of privilege.

Aetna maintains that there are no audio recordings to produce.  And Aetna argues that it has fully responded to the request that seeks all communications regarding his claims by producing the entire claims file.

### C.      Plaintiff's Reply

Citing ERISA, plaintiff notes that federal law provides that if a plan administrator relies on a rule or guideline to deny a claim, that rule or guideline must be provided to the claimant.  Plaintiff argues that this discovery will reveal whether Aetna has any claim-ameliorating procedures. Plaintiff contends that he does not seek a consistency plan, but only Aetna's policies and procedures to ensure that Aetna followed them.

With respect to Rubin's compensation (Int. No. 1), plaintiff argues that the information is relevant because the higher the amount that Aetna pays to Rubin, the more incentive he has to deny claims for Aetna.  With regard to the number of reviews that Rubin has performed and their outcomes (Int. No. 3), plaintiff contends that, coupled with the information on his compensation, the information is relevant because it would demonstrate that he has received a significant amount of money for rendering favorable opinions.

With regard to the compensation of Aetna's employees (RFP Nos. 2-4), plaintiff notes that case law supports the production of such information to determine whether the employees involved in reviewing a claimant's claim received a financial incentive to deny it.  Again citing case law,

5

plaintiff argues that courts have rejected a defendant's attempt to respond to such requests by providing an affidavit.  Plaintiff contends that he does not simply have to take Aetna's word for it.

With regard to performance evaluations, plaintiff argues that such records will shed light on whether Aetna continues to employ a "bad" employee who fails to perform all of his duties before reaching a final assessment on a claim.

Lastly, plaintiff contends that Aetna would have recorded its conversations with plaintiff. With regard to Aetna's written communications (RFP Nos. 1 and 17), plaintiff contends that he does not seek post-suit communications, and thus no privilege applies.

## III.   Law and Analysis

In *Crosby v. Louisiana Health Service & Indemnity Co.*, the Fifth Circuit held:

> We find that *Vega* [*v. National Life Insurance Services, Inc.*, 188 F.3d 287 (5th Cir. 1999) (en banc), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)], prohibits the admission of evidence to resolve the merits of the coverage determination – *i.e.* whether coverage should have been afforded under the plan – unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures. *See id.* at 299-300. A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded. *See id. Vega* does not, however, prohibit the admission of evidence to resolve other questions that may be raised in an ERISA action. For example, in an ERISA action under 29 U.S.C. § 1132(a)(1)(B), a claimant may question the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan. These issues are distinct from the question of whether coverage should have been afforded under the plan.  We see no reason to limit the admissibility of evidence on these matters to that contained in the administrative record, in part, because we can envision situations where evidence resolving these disputes may not be contained in the administrative record. Accord *Murphy*, 619 F.3d at 1158 & n.2; *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638-39 (5th Cir. 1992). A discovery request for such information may be relevant and thus permissible under federal discovery rules. *See Wiwa*, 392 F.3d at 820.

647 F.3d 258, 263 (5th Cir. 2011) (footnotes omitted); *see also Sanders v. Unum Life Ins. Co. of*

*Am.*, No. 4:08CV00421, 2008 WL 4493043, *4 (E.D. Ark. Oct. 2, 2008) ("Sanders is entitled to know whether the review conducted by Unum in his case complied with Unum's internal guidelines and policies, if such guidelines and policies exist."); *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 233 (E.D.N.Y. 2008) (holding that insurance company's financial arrangements with medical professionals as well as the number of times they had been retained by insurance company to provide similar services was discoverable); *Crider v. Life Ins. Co. of N. Am.*, Civ. A. No. 3:07-CV-331, 2008 WL 239659, *6 (W.D. Ky. Jan. 29, 2008) (holding that information regarding the compensation scheme, bonus structures and other pay incentives are discoverable and relevant to bias in the decision-making process).  Nonetheless, while recognizing the expansion of the scope of discovery in an ERISA action, the Fifth Circuit has also cautioned district courts to closely monitor discovery and "be mindful of the limitations placed on the frequency and extent of discovery under the federal rules, particularly Rule 26(b)." *Crosby*, 647 F.3d at 264.

Pursuant to *Crosby* and for the following reasons, the Court grants the motion.  The case law supports plaintiff's arguments that all of the sought-after information – if it exists and to the extent that it is not already in the administrative record – is discoverable under the factual circumstances here.  The topics on which plaintiff seeks discovery relate to those exceptions outlined by the Fifth Circuit in *Crosby*, *i.e.*, the completeness of the administrative record, whether the plan administrator complied with ERISA's procedural regulations,  and the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan.

The Court first limits all of plaintiff's discovery requests to the handling of disability claims under ERISA and to the handling and review of plaintiff's claim.

The Court also finds that with regard to the performance evaluations, only those related to

those employees who reviewed plaintiff's claim are discoverable. There is some dispute as to whether Carole Roy and/or Susan Page reviewed plaintiff's claim. If Carole Roy and Susan Page were not involved in the decision to deny plaintiff benefits, their evaluations are not discoverable. Any personal information should be redacted from the evaluations.

The Court also adds a temporal limitation to the discovery requests. The responses and production of documents is limited to the years 2006 through the present.

And with regard to any information sought regarding the compensation scheme, bonus structures and other pay incentives, the Court orders production only of company-wide policies and not of individual compensation records. *See Crider*, 2008 WL 239659, *6.

If no responsive information or documents exist, Aetna shall formally so state.

Aetna shall comply with this Order **no later than ten (10) days from its date**. Should Aetna seek to claim privilege on any document, it may produce a privilege log, and plaintiff may file the appropriate motion to challenge such privilege, should circumstances so warrant.

## IV.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Compel Discovery [Doc. #14] is GRANTED as outlined above..

New Orleans, Louisiana, this 2nd day of August, 2013.

8

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**